1   Kathleen A. Weber, #016076
    Larry O. Folks, #012142
2   FOLKS & O'CONNOR, PLLC
    1850 N. Central Ave, #1140
3   Phoenix, AZ  85004
    (602) 515-0129
4   (weber@folksoconnor.com)

5   Rachel M. Dollar, Calif. SBN #199977
    Jon A.C. Vonder Haar, Calif. SBN #192665
6   SMITH DOLLAR PC
    Attorneys at Law
7   404 Mendocino Avenue, Second Floor
    Santa Rosa, California 95401
8   Telephone:  (707) 522-1100

9   Attorneys for Plaintiff M & I Marshall & Ilsley Bank

10                  IN THE UNITED STATES DISTRICT COURT

11                     FOR THE DISTRICT OF ARIZONA

12
    M & I MARSHALL & ILSLEY BANK,          CASE NO.:  CV 09-1983-PHX-NVW
13
          Plaintiff,                       FIRST AMENDED COMPLAINT FOR
14  v.                                     DAMAGES AND DEMAND FOR TRIAL
                                           BY JURY
15  KYLE WRIGHT; SHAUNA
    BRAUCHLER; CAMELBACK TITLE             Judge:   Honorable Neil V. Wake
16  AGENCY; JOAN PATTERSON and
    JOSEPH PATTERSON, as wife and
17  husband; ROXANNE BOYLE and DAVID
    BOYLE, as wife and husband; and FIRST
18  AMERICAN TITLE INSURANCE
    COMPANY,
19
          Defendants.
20

21  AND RELATED CROSS ACTIONS

22

23          Plaintiff M & I Marshall & Ilsley Bank ("Plaintiff"), by and through its attorneys,

24  alleges and states as follows:

25                       A.      PARTIES

26          1.      Plaintiff is, and at all times relevant hereto was, a corporation duly organized

27  and existing under the laws of Wisconsin with its principal place of business in Milwaukee,

28  Wisconsin.  Plaintiff is engaged in the business of providing loan funds to individual



borrowers in connection with, among other things, the purchase of residential real estate. Plaintiff funded the loan that is the subject of this action. At all times relevant herein, Plaintiff was authorized to conduct business in Arizona, and held all licenses necessary to do so.

2. Upon information and belief, defendant Kyle Wright ("Wright") is a citizen of Arizona and is the borrower of the subject loan and buyer of the subject property described below.

3. Upon information and belief, defendant Shauna Brauchler ("Brauchler") is a citizen of Arizona and is the seller of the subject property described below.

4. Upon information and belief, defendant Camelback Title Agency ("CTA") is, and at all times relevant herein was, an Arizona entity organized under the laws of the State of Arizona with its principal place of business in Arizona. CTA is, and at all times relevant herein was, authorized to do business in the State of Arizona. CTA is engaged in the business of settlement and closing services for real estate transactions.

5. Upon information and belief, defendant Joan Patterson ("Patterson") is, and at all times relevant herein was, a citizen of Arizona, and a managing agent, servant, and employee of CTA, conducting settlement and closing services on its behalf, and in doing the things alleged in this Complaint, Patterson was acting within the course and scope of such agency, service and employment and with the knowledge, permission and consent of CTA and ratification by CTA.

6. Upon information and belief, defendant Joseph Patterson is, and at all times relevant was the spouse of defendant Joan Patterson, because the wrongful conduct of defendant Joan Patterson alleged herein was engaged in for the benefit of her marital community, thereby rendering her spouse, and their marital community liable for such conduct.

7. Upon information and belief, defendant Roxanne Boyle ("Boyle") is, and at all times relevant herein was, an agent, servant, and employee of CTA, conducting settlement and closing services on its behalf, and in doing the things alleged in this

First Amended Complaint for Damages



Complaint, Boyle was acting within the course and scope of such agency, service and employment and with the knowledge, permission and consent of CTA.

8.     Upon information and belief, defendant David Boyle is, and at all times relevant was the spouse of defendant Roxanne Boyle, because the wrongful conduct of defendant Roxanne Boyle alleged herein was engaged in for the benefit of her marital community, thereby rendering her spouse, and their marital community liable for such conduct.

9.     Upon information and belief, defendant First American Title Insurance Company ("FATICO") is, and at all times relevant herein was, a corporation organized and existing under the laws of the State of California, with its principal place of business in Santa Ana, California.  FATICO is doing, and at all times relevant herein was authorized to do business in the State of Arizona.  Plaintiff is informed and believes and herein alleged that FATICO is engaged in the business of issuing title insurance, insured closing protection letters and other related services.

10.    Upon information and belief, JaimeLee Lawler, alias Sherri Ann Lawler ("Lawler"), is a citizen of Arizona and at all times relevant herein was, and still is, in a romantic on again, off again relationship with Brauchler.

11.    Upon information and belief, Lawler, at all times relevant herein, held herself out as a loan officer, mortgage broker, real estate professional, real estate investor, and an owner of a construction company that referred settlement agent business to, and had a business relationship with CTA and Patterson, wherein Lawler would refer closing and settlement agent services to CTA and Patterson, and CTA and Patterson would notarize documents for Lawler.

12.    Upon information and belief, CTA's and Patterson's activities benefited and furthered the business of CTA and Patterson because of the repeat business that Lawler referred to and generated for CTA and Patterson.

13.    Upon information and belief, Plaintiff alleges one or more of these defendants caused certain acts to occur in Arizona which form the basis of Plaintiff's Complaint.



Plaintiff will amend this Complaint to reflect the true names and identities of such individuals as such names become known to it.

**B.     JURISDICTION AND VENUE**

14.     This court has jurisdiction under 28 USC § 1332, in that it is a civil action between corporations and citizens of different states in which the matter in controversy exceeds, exclusive of interest and costs, the sum of seventy five thousand dollars ($75,000.00).  Venue is proper in that Defendants are subject to personal jurisdiction in this district at the time the action is commenced.  In addition, the real property that is the subject of this litigation is located in Arizona.

**C.     SUBMISSION OF AND APPROVAL OF LOAN**

15.     In or about March 2007, Wright and Brauchler entered into a Purchase Contract, wherein Wright agreed to purchase from Brauchler the property located at 15531 E. Tacony Drive, Fountain Hills, Arizona. ("Property") for $1,950,000.

16.     The Purchase Contract was prepared by Lawler and she selected Patterson and CTA as the settlement agent for the purchase transaction between Wright and Brauchler.

17.     In or about May 2007, to finance the purchase of the Property, with the assistance of Lawler, Wright completed or caused to be completed Form 1003 Uniform Residential Loan Application ("Application") and provided additional supporting documentation, including, but not limited to, documentation reflecting income, employment, and other financial records (the Application and such documentation are hereinafter collectively referred to as "Loan Application Package"), and submitted the Loan Application Package to Plaintiff for consideration for funding of Wright's purchase of the Property and for a construction loan in the amount of $200,000 to be placed in a construction loan account for the purpose of completing a remodel of the Property.

18.     In the Loan Application Package, Wright represented that he had liquid assets of at least $386,000, which included a money market account at and bank statement from Arizona Federal in the amount of $276,207.58.

19.     Based on the representations in the Loan Application Package, including, but



not limited to, the representation that Wright had liquid assets of at least $386,000, Wright was approved for financing for the purchase of the Property in the amount of $1,995,000, which included a $200,000 construction loan based on the condition, among other things, that Wright contribute $152,825.16 to the transaction.

### D.      CLOSING OF THE LOAN

20.     CTA, Patterson and Boyle (collectively referred to herein as "Settlement Agent") were designated by Wright, Brauchler, and Lawler to conduct the closing of the transaction.

21.     In conducting the closing, Settlement Agent agreed to comply with Plaintiff's Closing Instructions and, additionally, assumed a fiduciary duty to Plaintiff to, *inter alia*, provide Plaintiff full disclosure of all information that might affect its decision to fund the Loan, including, but not limited to, the disclosure of facts that a reasonable settlement agent would perceive as evidence of fraud being committed on a party to the transaction. Attached hereto as **Exhibit A** and incorporated herein as if fully set forth, is a true and correct copy of Plaintiff's Closing Instructions.

22.     In the Purchase Contract, it was disclosed that Brauchler would pay up to 3% of the purchase price for Wright's closing costs.  Plaintiff's Closing Instructions prohibited the Settlement Agent from allowing Brauchler to contribute more than the 3% disclosed on the Purchase Contract, which is $58,500 (3% of $1,950,000), as follows: "ANY SELLER CREDITS WHICH WERE NOT PREVIOUSLY PART OF THE CONTRACT OF THE SALE MUST BE AUTHORIZED BY THE LOAN CLOSER PRIOR-TO-CLOSING."

23.     In addition, the Closing Instructions also prohibit Wright from receiving more than $2,000 or 2% of the loan amount, whichever is less, as follows: "Cash back to borrower may not exceed the lesser of $2,000 or 2% of loan amount."

24.     Prior to and in connection with the funding and closing of the Loan, the Settlement Agent, in purported compliance with the Closing Instructions and its duties to Plaintiff, prepared  Estimated and Certified Estimated (or Preaudit) HUD-1 Settlement Statement for Plaintiff's review and approval. The Closing Instructions provide as follows:



1   "Preaudit must be reviewed/approved prior to documents being signed. … Fax preaudit

2   along with wiring instructions to Funding…"

3        25.   The Certified HUD-1s, either Final or Estimated, provided to Plaintiff by

4   Settlement Agent are Certified, as follows: "I Certify that this is a true and correct copy of

5   the original documents" and signed by the Settlement Agent.

6        26.   In addition, all of the HUD-1s, provided to Plaintiff by Settlement Agent are

7   separately signed by Wright and Brauchler with the following Certification: "I have

8   carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and

9   belief, it is a true and accurate statement of all receipts and disbursements made on my

10  account or by me in this transaction. I further certify that I have received a copy of the

11  HUD-1 Settlement Statement."

12       27.   Further, all of the HUD-1s, provided to Plaintiff by Settlement Agent are

13  separately signed by Settlement Agent with the additional certification, as follows: "To the

14  best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and

15  accurate account of the funds which were received and have been or will be disbursed by

16  the undersigned as part of the settlement of this transaction."

17       28.   Again, in apparent compliance with the Closing Instructions and duties and

18  obligations of the Settlement Agent, the Estimated and Certified Estimated HUD-1s

19  represented that Brauchler would pay Wright's closing costs, which were within the 3%

20  disclosed in the Purchase Contract and allowed by the Closing Instructions and that Wright

21  would and actually did contribute $152,825.16 of his own funds to the transaction, which

22  would have been deposited in CTA's escrow, as required and represented by the Settlement

23  Agent.

24       29.   Based on the representation of Settlement Agent that the Closing Instructions

25  were complied with, and the purported accuracy of the Estimated and Certified Estimated

26  HUD-1s that Wright had contributed $152,825.16 to the transaction as required, Plaintiff:

27  (i) approved the Estimated and Certified Estimated HUD-1s; (ii) wired net Loan proceeds to

28  a bank account directed by the Settlement Agent; and (iii) authorized the Settlement Agent

First Amended Complaint for Damages

1   to close the transaction and disburse Plaintiff's funds consistent with the representations in

2   the Estimated and Certified Estimated HUD-1s.

3      30.  Plaintiff relied on Settlement Agent's compliance with its fiduciary duty,

4   certification of compliance with the Closing Instructions, and the representations in the

5   Estimated and Certified Estimated HUD-1s, when Plaintiff wired funds to a bank account

6   directed by Settlement Agent and authorized Settlement Agent to close escrow, disburse

7   Plaintiff's funds and close the transaction. The Settlement Agent was compensated for

8   closing and escrow services from the Loan funds, the amount of which is identified in the

9   HUD-1 Settlement Statement.

10      31.  After the closing occurred and Plaintiff's funds were disbursed, Settlement

11   Agent provided a Certified Final HUD-1 Settlement Statement to Plaintiff, which was

12   consistent with the Estimated and Certified Estimated HUD-1s provided to and approved by

13   Plaintiff, showing that Wright contributed $152,825.16 to the transaction.

14        **E.**   <u>**DEFAULT AND FORECLOSURE OF THE LOAN**</u>

15      32.  Following the closing of the Loan, mortgage payments were made for a

16   period of time until the Loan went into default.

17      33.  Foreclosure proceedings against the Property were initiated. The foreclosure

18   sale resulted in the loss of principal to Plaintiff in the amount of $1,200,000, exclusive of

19   interest, costs and attorneys' fees.  Thereafter, the Property was sold by Plaintiff to a third

20   party. The liquidation of the Property resulted in a total loss of principal $1,374,900,

21   exclusive of interest, costs and attorneys' fees.

22        **F.**   <u>**FRAUD SCHEME AND MISREPRESENTATION**</u>

23      34.  Brauchler and Lawler, desperate to sell the Property and needing a qualified

24   buyer to complete the sale, orchestrated a sham sale of the Property as follows.

25      35.  Brauchler and Lawler recruited Wright to act as purchaser of the Property

26   even though Brauchler, Lawler, Wright and others knew that Wright did not have his own

27   funds for the transaction and would not be a qualified buyer to purchase the Property.

28      36.  To make it appear that Wright was a qualified buyer, Brauchler and/or Lawler



First Amended Complaint for Damages

either transferred funds of approximately $276,207.58 into Wright's Arizona Federal money market account or placed Wright's name on an existing account of Lawler and/or Brauchler in order to make it appear that such liquid funds were the property of Wright.

37.     In order to assure closing of the transaction at the direction of Brauchler and Lawler, Brauchler and Lawler specifically selected Settlement Agent be the settlement agent for the transaction.

38.     Brauchler and Lawler chose Settlement Agent for the transaction knowing that Settlement Agent would act at their direction given Lawler's past and prospective business with Settlement Agent as well as referrals to Settlement Agent which Settlement Agent valued.

39.     Brauchler and Lawler directed Settlement Agent not to collect or receive funds from Wright for the transaction but rather accept $152,825.16 in funds from Brauchler.

40.     Settlement Agent agreed to and in fact did not collect or receive funds from Wright for the transaction and instead accepted $152,825.16 in funds from Brauchler.

41.     Brauchler and Lawler directed Settlement Agent to document the transaction such that Plaintiff would not know that Wright did not contribute his own funds for the transaction.

42.     Settlement Agent agreed to and in fact did document the transaction, with the intention that Plaintiff would not know that Wright did not contribute his own funds for the transaction, by Patterson's and Boyle's preparation and certification of the following documents: (i) a Final HUD-1 Settlement Statement intended for and delivered to Plaintiff which falsely showed Wright's contribution of $152,825.16 of his own funds to the transaction; and (ii) a Final HUD-1 Settlement Statement intended for and delivered to Brauchler which correctly showed that Wright did not contribute any of his own funds to the transaction.

43.     Brauchler and Lawler further directed Settlement Agent to not inform Plaintiff of the true facts of funding and closing the transaction.



First Amended Complaint for Damages

44.     Settlement Agent agreed to and in fact did not inform Plaintiff of the true facts of funding and closing the transaction, therefore the representations Settlement Agent made to Plaintiff that Wright would and did contribute $152,825.16 to the transaction are false and phony.

45.      In a recent investigation, CTA provided Plaintiff with another Final HUD-1 Settlement Statement that revealed that the Settlement Agent violated the Closing Instructions and deceived Plaintiff by, among other things, not collecting or receiving any funds from Wright.

46.     In addition, it was recently discovered during discovery, that Boyle had prepared, generated, and created some of the false HUD-1s.

47.     In addition, it was recently discovered that Settlement Agent never informed Wright that he was required to contribute any funds to close the transaction.

48.     Further, it was discovered that the Settlement Agent was acting at the direction and control of Lawler, a non-party to the transaction, and that Lawler directed the Settlement Agent to prepare false Settlement Statements to deceive Plaintiff into believing that Wright had contributed $152,825.16 to the transaction.

49.     In addition, it appears that Patterson falsely notarized documents and knowingly caused to be recorded documents that are false, phony and forged, including but not limited to Warranty Deeds.

50.     It was also recently learned that the Settlement Agent did not disburse any funds to Brauchler as represented in the Certified Estimated and Final HUD-1s provided to Plaintiff by Settlement.  Rather, the Settlement Agent disbursed $277,254.42 directly to Lawler.

51.     The Settlement Agent acted in such a wrongful manner because Lawler referred settlement services to Settlement Agent and Settlement Agent valued and sought repeat business and business referrals from Lawler.  Settlement Agent also allowed its offices to be used by Lawler to meet with clients prior to closings.

52.     Had any of the foregoing been disclosed to Plaintiff, it would not have



1   approved and funded the Loan.

2   53.   When Plaintiff learned of the misrepresentation, demand was made on
3   Settlement Agent to indemnify Plaintiff. Settlement Agent failed and/or refused to
4   indemnify Plaintiff.

5   54.   Recently, the depositions of Patterson and Lawler were conducted in order to
6   discover information concerning the closing of the transaction, the numerous HUD-1s, and
7   the misrepresentations alleged in this Complaint. Patterson and Lawler refused to answer
8   any questions concerning anything related to this Complaint, or anything at all, on the basis
9   that their responses would be evidence of a crime and, therefore, they asserted their
10   Constitutional right against self-incrimination.   Attached hereto as **Exhibit B** is the
11   deposition transcript of Patterson, which is incorporated herein by this reference, as if fully
12   set forth, wherein Patterson refuses to answer any questions on the basis of her
13   Constitutional rights against self incrimination.

14   **G.   INSURED CLOSING PROTECTION LETTER COVERAGE**

15   55.   CTA is, and at all relevant times herein was, an authorized agent of FATICO.

16   56.   To become an authorized agent of FATICO, CTA is required, among other
17   things, to conduct its settlement services within the policies and procedures directed by
18   FATICO and to comply with any updates, warnings, guidelines, and additional information
19   concerning the proper closing of a real property transaction.

20   57.   In exchange, FATICO agrees to enter into an agency relationship with CTA
21   and agrees to indemnify parties to a real estate transaction for any dishonesty or fraud on the
22   part of the Settlement Agent.

23   58.   FATICO issued an Insured Closing Protection Letter ("ICPL"), upon which
24   Plaintiff is a named insured, for the closing conducted by or on behalf of the Settlement
25   Agent, and which explicitly insures Plaintiff for losses resulting from: "Fraud dishonesty of
26   the Issuing Agent in handling your funds or documents in connection with such closings."
27   The ICPL is attached here as **Exhibit C** and incorporated as if fully set forth herein.

28   59.   Plaintiff notified FATICO of the fraud and dishonesty of its Settlement Agent

First Amended Complaint for Damages

in closing the Loan. Such information irrefutably provides evidence of the fraud and/or dishonesty of the Settlement Agent in closing the Loan for the purpose of Plaintiff obtaining the benefit under the ICPL.

60. FATICO ultimately denied Plaintiff's claim without investigation.

61. In breach of its obligations under the ICPL, FATICO engaged in conduct in order to prevent and unjustly delay payment or full payment of ICPL benefits to Plaintiff, including, but not limited to, the following:

- Intentionally ignoring the claim for an unreasonable time;
- Failing and refusing to investigate the claim and/or investigating the claim in an effort to avoid paying coverage benefits;
- Failing and refusing to dispute any information provided by Plaintiff that Settlement Agent's conduct was fraudulent and/or dishonest under the ICPL; and
- Failing and refusing to accept or deny its obligation to Plaintiff under the ICPL for an unreasonable amount of time.

62. As a result of FATICO's conduct, Plaintiff has been wrongfully forced to hire its own counsel to prosecute this action in order to obtain ICPL benefits and has and continues to incur damages related to prosecution of this action.

63. In committing the acts described herein, FATICO acted with conscious disregard for the rights of Plaintiff and was guilty of malice, oppression and fraud, in that FATICO never intended to investigate Plaintiff's claim or pay ICPL benefits.

### H. CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**Intentional Misrepresentation**
**(Against Wright)**

64. Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

65. A requirement for Plaintiff to approve and fund the Loan was that Wright must have liquid assets of at least $386,000 and contribute $152,825.16 to the transaction and provide such funds to the Settlement Agent. The only consideration to be paid by



Brauchler to Wright was contribution of Wright's non-recurring closing costs up to 3% of the purchase price of the Property, as disclosed to Plaintiff in the Purchase Contract, which ultimately amounted to just $18,646.16.  In addition, Wright was precluded from receiving any additional consideration of more than $2,000 or 2% of the Loan amount, whichever was less.

66.     Wright represented that he did have liquid assets of at least $386,000 and would and that he actually did contribute $152,825.16 to the transaction.

67.     The representations were false, as it was recently learned that the Arizona Federal money market bank account with $276,207.58, was not owned by Wright.  Further, Brauchler contributed the entire $152,825.16, which was not disclosed to Plaintiff and was specifically prohibited.   Wright made the representations and false certification and hid the true source of the funds from Plaintiff with the intent of inducing Plaintiff to approve and fund the Loan.

68.     Plaintiff believed and reasonably relied upon the representations and certification made by Wright, which induced Plaintiff to approve and fund the Loan. Had Plaintiff known the true facts, it would not have approved and funded the Loan.

69.     As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,374,900, exclusive of interest, costs and attorneys' fees. In addition, the conduct of Defendant evidences an evil mind, was intentional, knowing, malicious, done with reckless disregard for the rights of Plaintiff, and done with intent to injure Plaintiff substantially, without just cause or excuse, so that Plaintiff is entitled to punitive damages.

### SECOND CAUSE OF ACTION
#### Intentional Misrepresentation
#### (Against Brauchler)

70.     Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

71.     A requirement for Plaintiff to approve and fund the Loan was that Wright and not Brauchler contribute $152,825.16 to the transaction.  Brauchler was prohibited from



contributing more than 3% of Wright's nonrecurring closing costs, which was ultimately determined to be $18,646.16.

72.     The representation that Brauchler contributed only $18,646.16 was false. Instead, Brauchler contributed an additional $152,825.16 on behalf of Wright, which was not disclosed to Plaintiff in the Purchase Agreement and specifically prohibited by Plaintiff's Closing Instructions.  Brauchler hid her unauthorized contribution from Plaintiff with the intent of inducing Plaintiff to approve and fund the Loan.

73.     Plaintiff believed and reasonably relied upon the representations and certification made by Brauchler that she only contributed $18,646.16 to the transaction, which induced Plaintiff to approve and fund the Loan. Had Plaintiff known the true facts, it would not have approved and funded the Loan.

74.     As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,374,900, exclusive of interest, costs and attorneys' fees. In addition, the conduct of Brauchler evidences an evil mind, was intentional, knowing, malicious, done with reckless disregard for the rights of Plaintiff, and done with intent to injure Plaintiff substantially, without just cause or excuse, so that Plaintiff is entitled to punitive damages.

**THIRD CAUSE OF ACTION**
**Intentional Misrepresentation**
**(Against CTA, Patterson, and Boyle)**

75.     Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

76.     A requirement for Plaintiff to approve and fund the Loan was that Wright contribute $152,825.16 to the transaction.

77.     The Settlement Agent represented to Plaintiff in the Estimated and Certified HUD-1 Settlement Statements that Wright would and did contribute $152,825.16 to the transaction. Such representations were false when made, the Settlement Agent knew the falsity of the representations when made, and Settlement Agent intended Plaintiff to rely on the truth of the representations.

78.     Plaintiff believed and reasonably relied upon the representations and certifications made by the Settlement Agent in the false Estimated and Certified Estimated HUD-1s that Wright would and did contribute $152,825.16 to the transaction, which induced Plaintiff to approve and fund the Loan, wire loan proceeds at the direction of Settlement Agent, and authorize the Settlement Agent to close the transaction and disburse loan proceeds.

79.     Had Plaintiff known the true facts, it would not have approved and funded the Loan, wired loan proceeds, or authorized the closing of the transaction and disbursement of its funds.

80.     As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,374,900, exclusive of interest, costs and attorneys' fees. In addition, the conduct of Settlement Agent evidences an evil mind, was intentional, knowing, malicious, done with reckless disregard for the rights of Plaintiff, and done with intent to injure Plaintiff substantially, without just cause or excuse, so that Plaintiff is entitled to punitive damages.

### FOURTH CAUSE OF ACTION
#### Negligent Misrepresentation
#### (Against CTA, Patterson, and Boyle)

81.     Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

82.     Settlement Agent closed the Loan without following Plaintiff's Closing Instructions and failed to notify Plaintiff of the irregularity, fraudulent conduct and additional consideration paid to Wright when it failed to accept a down payment only from Wright.   Without reasonable grounds to believe that it complied with the Closing Instructions and/or with reckless disregard for the truth, Settlement Agent certified that all of the Closing Instructions were followed and submitted the certified Closing Instructions to Plaintiff to induce Plaintiff, and which did induce Plaintiff, to fund the Loan.

83.     Plaintiff was unaware of the falsity of the representations and justifiably relied on the representations.



84.     As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,374,900, exclusive of interest, costs and attorneys' fees.

### FIFTH CAUSE OF ACTION
#### Negligence
#### (Against CTA, Patterson, and Boyle)

85.     Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

86.     Settlement Agent has a duty to follow Plaintiff's Closing Instructions and to notify Plaintiff of, among other things, any irregularities, fraudulent conduct, additional consideration paid to Wright, and illegal kickbacks.

87.     Settlement Agent failed to exercise reasonable care and breached the duty of care when it accepted the required down payment from Brauchler instead of Wright and failed to notify Plaintiff of such conduct.

88.     Plaintiff was unaware that Settlement Agent failed to conform its conduct within the standard of care and justifiably relied on the representations that Settlement Agent's conduct was within the standard of care.

89.     As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,374,900, exclusive of interest, costs and attorneys' fees.

### SIXTH CAUSE OF ACTION
#### Constructive Fraud
#### (Against CTA, Patterson, and Boyle)

90.     Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

91.     Settlement Agent is in a confidential and fiduciary relationship with Plaintiff.

92.     Settlement Agent has breached its legal or equitable duty, trust or confidence to Plaintiff by its respective acts, omissions, or concealment.

93.     Settlement Agent has gained an advantage by said breach in that it has, among other things, wrongly received compensation from Plaintiff for the closing and funding of



the Loan.

94.    Plaintiff justifiably relied, to its detriment, on the acts, omission, or concealment by Settlement Agent when it funded the Loan.

95.    As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,374,900, exclusive of interest, costs and attorneys' fees. In addition, the conduct of Settlement Agent evidences an evil mind, was intentional, knowing, malicious, done with reckless disregard for the rights of Plaintiff, and done with intent to injure Plaintiff substantially, without just cause or excuse, so that Plaintiff is entitled to punitive damages.

**SEVENTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(Against CTA, Patterson, and Boyle)**

96.    Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

97.    Settlement Agent owed Plaintiff a legal duty of undivided service and loyalty, which duty is fiduciary and/or quasi fiduciary in nature, and imposes upon Settlement Agent the highest standard of good faith.

98.    Settlement Agent breached its fiduciary duty to Plaintiff by engaging in the misrepresentations, omissions, and fraudulent acts referred to herein.

99.    As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,374,900, exclusive of interest, costs and attorneys' fees. The conduct of Settlement Agent evidences an evil mind, was intentional, knowing, malicious, done with reckless disregard for the rights of Plaintiff, and done with intent to injure Plaintiff substantially, without just cause or excuse, so that Plaintiff is entitled to punitive damages.

**EIGHTH CAUSE OF ACTION**
**Breach of Contract**
**(Against CTA)**

100.    Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.



101.   CTA entered into a written agreement with Plaintiff, whereby CTA agreed to strictly follow all of the provisions in the Closing Instructions.

102.    CTA breached the terms of the Closing Instructions by allowing Brauchler to contribute an additional $152,825.16 to the transaction, the amount Wright was to contribute, as such was prohibited by the Closing Instructions.

103.   CTA represented that it strictly followed all of the provisions in the Closing Instructions, including, but not limited to, that the $152,825.16 was from Wright, not Brauchler, that Brauchler only contributed $18,646.16 to Wright's non-recurring closing costs, and that Wright did not receive more than $2,000 cash back from the transaction.

104.   CTA breached the Closing Instructions by accepting the $152,825.16 from Brauchler and not Wright, allowing Brauchler to contribute more than the disclosed $18,646.16 to the transaction, failing to inform Plaintiff of the source of the prohibited contribution, and hiding the prohibited contribution from Plaintiff.

105.   Plaintiff has performed all terms, conditions and covenants required of it by the terms of the Closing Instructions.

106.   Plaintiff provided notice to CTA of the breach of the Closing Instructions and demanded that Settlement Agent reimburse Plaintiff for any and all of its losses.  CTA refused to indemnify Plaintiff.

107.   As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,374,900, exclusive of interest, costs and attorneys' fees.

**NINTH CAUSE OF ACTION**
**Breach of Implied Covenant of Good Faith and Fair Dealing**
**(Against CTA)**

108.   Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

109.   The breach of the Closing Instructions is a breach of the implied covenant of good faith and fair dealing by CTA.  Given the manner in which CTA conducted the signing, closing, and collected the $152,825.16 from Brauchler and not Wright, it is



anticipated that CTA will contend that the Closing Instructions do not apply and, therefore, CTA is attempting to prevent Plaintiff from receiving the benefit of the Closing Instructions.

110.   For the aforementioned reasons, the conduct of CTA is unreasonable and dishonest and, therefore, constitutes a breach of the implied covenant of good faith and fair dealing by CTA.

111.   As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,374,900, exclusive of interest, costs and attorneys' fees.

**TENTH CAUSE OF ACTION**
**Negligent Hiring and Supervision**
**(Against CTA)**

112.   Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

113.   CTA has a duty to prevent its employees, agents, and servants, such as Patterson, from causing harm to others, including, but not limited to, lenders such as Plaintiff.

114.   CTA had knowledge that Patterson and Boyle, prior to the closing of this transaction, had violated policies and procedures in closing other transactions and failed to take any action to protect others, including Plaintiff.

115.   CTA breached that duty: (a) In giving improper or ambiguous orders and failing to make proper regulations; and (b) In the employment of improper persons or instrumentalities in work involving risk of harm to others, in supervision of the activities, or in permitting, or failing to prevent, negligent or other tortious conduct by Patterson and Boyle, upon premises or with instrumentalities under CTA's control.

116.   CTA's conduct and/or failure to act resulted in damages to Plaintiff.

117.   As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,374,900, exclusive of interest, costs and attorneys' fees.



First Amended Complaint for Damages

### ELEVENTH CAUSE OF ACTION
### Breach of Contract
### (Against FATICO)

118.   Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

119.   Defendant, in connection with and as consideration for Plaintiff's procurement of Title Insurance, issued an ICPL (see, **Exhibit B**) for the benefit of Plaintiff, which obligates FATICO to indemnify Plaintiff for the loss of its funds as the result of fraud and/or dishonesty of Settlement Agent.

120.   Plaintiff has fully performed all conditions of Title Insurance and the ICPL on its part and, in accordance with its terms, gave FATICO due and timely notice and proof of loss and is entitled to ICPL benefits.

121.   FATICO, however, has failed and/or refused to take any action under the ICPL and/or indemnify Plaintiff and pay the sums or any part that is now due and owing to Plaintiff under the ICPL.

122.   FATICO, ultimately, denied the claim and continues to deny Plaintiff ICPL benefits, even though Patterson has asserted her Constitutional rights against self incrimination in all written discovery responses as well as to all deposition questions.

123.   Accordingly, not only has Plaintiff performed all terms, conditions and covenants required of it under the ICPL between Plaintiff and FATICO, Plaintiff has provided sufficient and undisputed proof that the Settlement Agent's conduct was dishonest and fraudulent and there is no information or evidence to the contrary.

124.   As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,374,900, exclusive of interest, costs and attorneys' fees.

### TWELFTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (Against FATICO)

125.   Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.



126.   FATICO, at all times relevant herein, had a duty to act fairly and in good faith with Plaintiff in meeting its responsibilities under the ICPL issued by FATICO.

127.   Implied in the ICPL is FATICO's obligation to act fairly and in good faith with Plaintiff by promptly investigating its claim and to avoid unfairly denying Plaintiff the benefits to which it is entitled under the ICPL.

128.   As further breach of FATICO's obligation to act fairly and in good faith with Plaintiff, FATICO continues to fail to investigate the Settlement Agent's wrongful conduct and has acted in a harassing or burdensome manner against Plaintiff.

129.   FATICO breached its obligation to act fairly and in good faith toward Plaintiff by failing to investigate Plaintiff's claim in a timely and thorough manner, conducted its investigation, if any, in an effort to avoid coverage, considered its interests over the interests of Plaintiff, failed and refused to provide a coverage determination, and wrongly failed and refused to provide coverage benefits under the ICPL.

130.   As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,374,900, exclusive of interest, costs and attorneys' fees.

### THIRTEENTH CAUSE OF ACTION
### Unjust Enrichment
### (Against All Defendants Except FATICO)

131.   Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

132.   As a direct and proximate result of the acts and transactions alleged herein, Defendants have been unjustly enriched, and have obtained money, earnings and benefits from Plaintiff to which defendants are not otherwise entitled, and which they would not have obtained had the true facts been known to Plaintiff.

133.   As a direct and proximate result of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial, including interest, attorneys' fees and costs.

/ / /

/ / /

First Amended Complaint for Damages

## FOURTEENTH CAUSE OF ACTION
### Civil Conspiracy to Commit Fraud
### (Against CTA, Brauchler, Wright, Patterson, and Boyle)

134.   Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

135.   Plaintiff is informed and believes, and on that basis alleges, that prior to the origination of the Loan and closing of the transaction, and in anticipation thereof, and at all times thereafter, Defendants, Lawler, and possibly others, and each of them, entered into a conspiracy and agreement to commit the acts alleged herein, and at all times had knowledge of, joined in the formation of, and participated in a conspiracy with each other to defraud Plaintiff by committing the acts and omissions alleged herein, and that said acts and omissions were committed in furtherance of said conspiracy, resulting in Plaintiff's injury and damage.

136.    Plaintiff is further informed and believes, and thereon alleges, that each of the acts and conduct of Defendants, Lawler, and possibly others, and each of them, as alleged herein, was in furtherance of the intent and purpose of the agreement and conspiracy alleged herein.

137.   The conduct of Defendants and Lawler, and possibly others, and each of them, described herein, evidences an evil mind, was intentional, knowing, malicious, done with reckless disregard for the rights of Plaintiff, and done to injure Plaintiff substantially, without just cause or excuse, so Plaintiff is entitled to recover punitive damages.

138.   As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,374,900, exclusive of interest, costs and attorneys' fees.

## FIFTEENTH CAUSE OF ACTION
### Conversion
### (Against All Defendants, except FATICO)

139.   Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

140.   Defendants, individually, collectively, and in conspiracy, converted to their



own use through their fraudulent, wrongful and unjust conduct, Plaintiff's money in an amount not less than $1,995,000.

141.   At all relevant times, Plaintiff owned and had the right to possess this sum at the time of the dispossession and conversion.

142.   In doing the acts described above, Defendants misappropriated the property and assets of Plaintiff by diverting the property of Plaintiff for their own use, the benefit of which should be disgorged from Defendants. Defendants are wrongfully exercising dominion over Plaintiff's money.

143.   As a direct, proximate and foreseeable result of Defendants' actions, Plaintiff suffered and continues to suffer substantial losses and damages in an amount to be proven at trial, but no less than $1,374,900, exclusive of interest, costs and attorneys' fees.

144.   Defendants committed the acts alleged herein maliciously, fraudulently and with the wrongful and deliberate intention of injuring Plaintiff and benefiting themselves and acted with an improper motive amounting to malice and conscious disregard of Plaintiff's rights.   Accordingly, Plaintiff is entitled to recover punitive and exemplary damages from Defendants.

145.   Between the time of Defendants' conversion and the filing of this action, Plaintiff expended time and money in pursuit of the property, exclusive of attorneys' fees and costs associated with preparation for litigation of the case, in an amount to be proven at trial.

## **PRAYER**

Plaintiff prays for judgment against the Defendants, individually, jointly and severally, and against their marital community, as applicable, as follows:

**First Cause of Action**       **(Intentional Misrepresentation - Against Wright)**

A.       Damages in an amount to be determined at trial, but no less than $1,374,900.00;

B.       Pre and Post judgment interest;

C.       Costs of suit;




1        D.      Punitive and exemplary damages; and

2        E.      Such other and further relief that the Court deems just and proper.

3  **<u>Second Cause of Action</u>**   **(Intentional Misrepresentation - Against Brauchler)**

4        A.      Damages in an amount to be determined at trial, but no less than

5 $1,374,900.00;

6        B.      Pre and Post judgment interest;

7        C.      Costs of suit;

8        D.      Punitive and exemplary damages; and

9        E.      Such other and further relief that the Court deems just and proper.

10  **<u>Third Cause of Action</u>**    **(Intentional Misrepresentation - Against CTA, Patterson and**

11     **Boyle)**

12      A.      Damages in an amount to be determined at trial, but no less than

13 $1,374,900.00;

14      B.      Pre and Post judgment interest;

15      C.      Costs of suit;

16      D.      Punitive and exemplary damages; and

17      E.     Such other and further relief that the Court deems just and proper.

18  **<u>Fourth Cause of Action</u>**   **(Negligent Misrepresentation - Against CTA, Patterson and**

19     **Boyle)**

20      A.      Damages in an amount to be determined at trial, but no less than

21 $1,374,900.00;

22      B.      Pre and Post judgment interest;

23      C.      Costs of suit; and

24      D.      Such other and further relief that the Court deems just and proper.

25  **<u>Fifth Cause of Action</u>**    **(Negligence - Against CTA, Patterson and Boyle)**

26      A.      Damages in an amount to be determined at trial, but no less than

27 $1,374,900.00;

28      B.      Pre and Post judgment interest;



1   C.      Costs of suit; and

2   D.      Such other and further relief that the Court deems just and proper.

3   **Sixth Cause of Action**      **(Constructive Fraud - Against CTA, Patterson and Boyle)**

4   A.      Damages in an amount to be determined at trial, but no less than

5   $1,374,900.00;

6   B.      Pre and Post judgment interest;

7   C.      Costs of suit;

8   D.      Punitive and exemplary damages; and

9   E.      Such other and further relief that the Court deems just and proper.

10  **Seventh Cause of Action**  **(Breach of Fiduciary Duty - Against CTA, Patterson and**

11  **Boyle)**

12  A.      Damages in an amount to be determined at trial, but no less than

13  $1,374,900.00;

14  B.      Pre and Post judgment interest;

15  C.      Costs of suit;

16  D.      Punitive and exemplary damages; and

17  E.      Such other and further relief that the Court deems just and proper.

18  **Eighth Cause of Action**    **(Breach of Contract - Against CTA)**

19  A.      Damages in an amount to be determined at trial, but no less than

20  $1,374,900.00;

21  B.      Pre and Post judgment interest;

22  C.      Reasonable attorneys' fees and costs of suit; and

23  D.      Such other and further relief that the Court deems just and proper.

24  **Ninth Cause of Action**      **(Breach of Implied Covenant of Good Faith and Fair**

25  **Dealing - Against CTA)**

26  A.      Damages in an amount to be determined at trial, but no less than

27  $1,374,900.00;

28  B.      Pre and Post judgment interest;



First Amended Complaint for Damages

C.      Costs of suit; and

D.      Such other and further relief that the Court deems just and proper.

**Tenth Cause of Action**     **(Negligent Hiring and Supervision - Against CTA)**

A.      Damages in an amount to be determined at trial, but no less than $1,374,900.00;

B.      Pre and Post judgment interest;

C.      Costs of suit; and

D.      Such other and further relief that the Court deems just and proper.

**Eleventh Cause of Action** **(Breach of Contract - Against FATICO)**

A.      Damages in an amount to be determined at trial, but no less than $1,374,900.00;

B.      Pre and Post judgment interest;

C.      Reasonable attorneys' fees and costs of suit; and

D.      Such other and further relief that the Court deems just and proper.

**Twelfth Cause of Action**   **(Breach of Implied Covenant of Good Faith and Fair Dealing - Against FATICO)**

A.      Damages in an amount to be determined at trial, but no less than $1,374,900.00;

B.      Pre and Post judgment interest;

C.      Reasonable attorneys' fees and costs of suit; and

D.      Such other and further relief that the Court deems just and proper.

**Thirteenth Cause of Action**        **(Unjust Enrichment - Against All Defendants Except FATICO)**

A.      Damages in an amount to be determined at trial, but no less than $1,374,900.00;

B.      Pre and Post judgment interest;

C.      Costs of suit; and

D.      Such other and further relief that the Court deems just and proper.

First Amended Complaint for Damages



**Fourteenth Cause of Action**     **(Civil Conspiracy to Commit Fraud - Against Brauchler, Wright, Patterson and Boyle)**

A.     Damages in an amount to be determined at trial, but no less than $1,374,900.00;

B.      Pre and Post judgment interest;

C.     Costs of suit;

D.     Punitive and exemplary damages; and

E.     Such other and further relief that the Court deems just and proper.

**Fifteenth Cause of Action** **(Conversion - Against All Defendants Except FATICO)**

A.     Damages in an amount to be determined at trial, but no less than $1,374,900.00;

B.      Pre and Post judgment interest;

C.     Costs of suit;

D.     Punitive and exemplary damages; and

E.     Such other and further relief that the Court deems just and proper.

DATED:  November 3, 2010          Respectfully submitted,

SMITH DOLLAR PC

/s/ Jon A.C. Vonder Haar
Jon A.C. Vonder Haar
Rachel M. Dollar
404 Mendocino Avenue, Second Floor
Santa Rosa, CA  95401
Telephone: 707.522.1100 Ext. 1112
Fax: 707.522.1101
Email: jvonderhaar@smithdollar.com

FOLKS & O'CONNOR, PLLC

/s/ Kathleen A. Weber
Kathleen A. Weber
Larry O. Folks
1850 N. Central Ave, #1140
Phoenix, AZ  85004
**Attorneys For Plaintiff M & I Marshall and Ilsley Bank**



1

## CERTIFICATE OF SERVICE

2

3       I hereby certify that on the 3rd day of November, 2010, I electronically transmitted

4   the attached document to the Clerk's office using the CM/ECF System for filing and

5   transmittal of a Notice of Electronic Filing to all active CM/ECF registrants for this matter.

6                                   FOLKS & O'CONNOR, PLLC

7                               By /s/ Kasie Grant

8   130049_2.doc

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



First Amended Complaint for Damages